[No. 2646.]

## Randall McNair *v.* The State.

1. **Theft—Charge of the Court.**—In a trial for theft the court charged as follows: "Possession of the person unlawfully deprived of property is constituted in all cases where the person so deprived of possession is, at the time of taking, lawfully entitled to the possession thereof as against the true owner." *Held*, correct in the abstract, but, in view of the evidence, erroneous, to the prejudice of the accused in this case.
2. **Same—Intent.**—Upon the question of intent, the court charged in a theft case as follows: "The intent in all criminal cases is judged of from the act." *Held*, error, inasmuch as it confines the question of intent to the act, whereas intent is to be deduced from all the circumstances remotely or immediately attending the taking.
3. **Same—Ownership.**—Upon the question of ownership the court charged: "If you believe from the evidence that the property as charged was not the property of the person as charged, beyond a reasonable doubt, you will acquit the defendant." *Held*, error, as announcing the very converse

of the correct rule, and requiring the jury to believe beyond a reasonable doubt that the property was *not* the property of the person in whom it was alleged.

4. SAME.—POSSESSION OF RECENTLY STOLEN PROPERTY is not of itself sufficient to sustain a conviction for theft. The rule is otherwise, however, when the recent possession of such property is unexplained, and the circumstances surrounding it are such as to demand explanation. And though the defendant be found in possession of property recently stolen, he is not required to show that his possesson is lawful; hence it was error to charge that, "if stolen property is traced to the recent possession of the defendant he must show that he came lawfully by it, or the law considers him the thief." See the opinion *in extenso* on the subject.

5. SAME.—The eleventh paragraph of the charge is as follows: "If the jury find that the property alleged to have been stolen was the property of the defendant, and that he had exercised actual control, care and management over the same, prior to the alleged taking, you will find the defendant not guilty." *Held*, error, inasmuch as when the evidence tended to show that the defendant was the legal owner of the property, the effect of the charge was to destroy such defense, unless the defendant could show that he exercised actual control, care and management of the property prior to the taking.

6. SAME—REASONABLE DOUBT.—The guilt, and not the innocence, of the accused is the affirmative proposition, which, in every criminal prosecution, must be established beyond a reasonable doubt; and hence the trial court erred in charging the jury that, "if you have any reasonable doubt as to the guilt *or innocence* of the defendant, you will give him the benefit of the doubt and acquit him."

7. THEFT—FACT CASE.—See evidence held insufficient to support a conviction for theft.

APPEAL from the County Court of Comal. Tried below before the Hon. E. Koebig, County Judge.

The appellant was convicted of the theft of a quantity of lumber under the value of twenty dollars, alleged to be the property of Andrew Watson, and his punishment was affixed by the verdict at a fine of twenty-five dollars and confinement in the county jail for one day.

Andrew Watson was the first witness introduced by the State. He testified that on the sixteenth day of February he was notified that some one was taking the lumber off of a house which stood about two and a half miles from where the witness was then living. Witness went to the house on that day and found that the lumber had been taken from the side room and from the floor of the house. He found fresh wagon tracks leading off in the direction of the defendant's house, which was about one

mile distant.   The witness followed these tracks to the defend-
ant's house, where he found the lumber lying in the defendant's
front yard.   He also found two shingles on the way.   Witness told
the defendant that some one had taken the lumber from his
house.   The defendant said: "*Your* lumber! I would use them
up for it."   Witness recognized the lumber and asked him where
he got it, and the defendant said: "From the house my son,
Taylor McNair, built (which was the house alluded to by wit-
ness), and I bought it from Taylor McNair and paid him for it a
long time ago."   When the witness claimed the lumber, the
defendant said, sneeringly: "*Your* lumber! *Your* lumber!"
The lumber was worth nineteen dollars, and was taken in Comal
county, in February, 1883, without the consent of the witness.
Witness was permitted, over objection, to state that he had at
home a deed conveying to him the land on which the house was
situated, together with the house and improvements.   The deed
was not lost, but could be had.

Cross-examined, the witness stated that he had no trouble
tracking the wagon.   When he and Daniel George arrived at
defendant's house, defendant invited them into the house, and
in going they had to pass near the lumber.   Witness asked him
why he did not come to see him before taking the lumber.   De-
fendant replied:   "I had no business to come and see you.   I
bought from Taylor McNair and paid for it a long time ago, and
I will take my property wherever I find it."   The witness heard
that Taylor McNair claimed the lumber before he, witness,
bought the house, but did not know it.   Taylor McNair lived in
this house when witness first knew him, three or four years ago.
Daniel George forbade both the defendant and Taylor taking
the lumber off.   Witness could not say that the wagon tracks
were or were not plain.   He denied that on February 21, 1883,
he stated that the wagon tracks were very plain; or that he
stated he knew that Taylor McNair set up a claim to the lumber; or
that he stated he found a pack of shingles on the road from the
dismantled house to the defendant's house.   Here the defendant
showed the witness a written document, which he acknowledged
he had signed as his statement.   It reads as follows:

"I had never lived in the house I bought.   I knew that Taylor
McNair set up a claim to the lumber.   Old man Daniel George
had forbade Taylor McNair and the defendant both from taking
the lumber.   Taylor McNair lived in the house in question about
four years ago.   It will soon be four years since Taylor McNair

lived in said house. I bought, at the time of buying the house, three hundred acres. ·Daniel George gave me the balance of the land, which makes about six hundred acres. The wagon tracks were very plain from where the lumber was taken to Mr. McNair's. I found on the route a small pack of shingles about two or three hundred yards from the house where they were taken. The defendant lives about one mile from this place on an air line."

The defendant made no effort to conceal the lumber. It was lying out in the front yard where any one could see it.

Daniel George, for the State, testified, over objection, to his conveyance of the land on which the house stood to Watson, and corroborated Watson as to the discovery of the lumber at the defendant's house and the conversation that ensued between Watson and the defendant.

Cross-examined, he testified that about seven years ago Taylor McNair contracted with him for the land on which the house stood. Taylor McNair furnished the lumber and built the house in controversy. Taylor McNair lived in that house about three years. He contracted in the same manner with witness for other land, and improved a farm on it, cultivating it for the three years he occupied the house in question. About a year after he moved off he sold the fence improvements to a son of the witness, and on two separate occasions tried to sell the lumber in the house to the witness. That was the same lumber which defendant is now charged with stealing. Witness declined to buy, and told Taylor McNair that he, witness, thought he was entitled to something for the use of the land. Taylor McNair had never, at any time, or in any manner, conveyed the lumber or the house to the witness. A year or two ago defendant told the witness that he had bought the lumber from Taylor, and witness forbade him taking it. Defendant made no effort to conceal the lumber after he took it.

John McNair testified, for the defense, that Taylor McNair partly built the house in question out of the lumber charged to be stolen by defendant. Taylor bought and paid for the lumber himself. Witness paid Taylor fifteen dollars for the defendant as part of the purchase money for the lumber in the house. Witness went with defendant to get the lumber. They went in the day time, and made considerable noise in tearing it from the frame of the house.

J. Dickson testified that he lent the defendant his wagon for

F'

the avowed purpose of hauling this lumber home, and that the defendant used it for that purpose.

The motion for new trial, setting up some eighteen or twenty grounds, was overruled, and this appeal prosecuted.

*J. D. Guinn*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Hurt, Judge. This is a conviction for the theft of lumber, the appellant being fined twenty-five dollars and imprisoned in the county jail one day.

A bill of exceptions was reserved to the following charges:

Third charge. "Possession of the person unlawfully deprived of property is constituted, in all cases, where the person so deprived of possession is at the time of taking lawfully entitled to the possession thereof as against the true owner."

"5. The intent in all criminal cases is judged from the act."

"7. If you believe from the evidence that the property taken, as charged, was not the property of the person as charged, beyond a reasonable doubt, you will acquit the defendant."

"9. If stolen property is traced to the recent possession of the defendant, he must show that he came lawfully by it, or the law considers him the thief."

"11. If the jury find that the property alleged to have been stolen was the property of the defendant, and that he had exercised actual control, care and management over the same, prior to the alleged taking, you will find the defendant not guilty."

"12. If you have any reasonable doubt as to the guilt or innocence of the defendant, you will give him the benefit of the doubt, and acquit him."

The third subdivision of the charge is abstractly correct, and if there was evidence in this case tending to show that the prosecutor was entitled to the possession of the lumber, as against the defendant, the owner, it would have been a proper charge. This, however, was not the case; hence the charge was calculated to injure defendant.

Fifth charge, to wit: "The intent in all criminal cases is judged of from the act." What act? The taking? The intent is judged of by all the circumstances attending, remotely or immediately, the taking—the facts relevant.

"7. If you believe from the evidence that the property

taken, as charged, was not the property of the person, as charged, beyond a reasonable doubt, you will acquit the defendant." By this the jury are required to believe, beyond a reasonable doubt, that the property was *not* the property of the prosecutor. The rule is clearly and emphatically the converse of this, requiring the jury to believe, beyond a reasonable doubt, that the property was that of the prosecutor.

"9. If stolen property is traced to the recent possession of the defendant, he must show that he came lawfully by it, or the law considers him the thief." Upon this predicate, the law does not so consider him; recent possession of stolen property alone has, we believe, never been held sufficient to sustain a conviction. Recent possession *unexplained,* when the circumstances demanded explanation, has been and is held (we think justly) sufficient. This applies to cases in which there is no evidence except the *corpus delicti,* recent possession, a demand for explanation, and a failure to explain. If there be other evidence, either for or against defendant, it may or may not be sufficient, depending always on the nature and weight of the evidence. Though the defendant may be in recent possession of stolen property, he is not required to show his *possession lawful* in the strict sense of that word. In a great many cases his acquisition of the property may not be lawful, yet amply sufficient to rebut the conclusion sought to be drawn from his possession, by the prosecutor. He, in acquiring possession, may have been a mere trespasser. Some one else may have placed him in possession wrongfully and unlawfully. This is merely an illustration of the ways and means by which the possession of the property, though stolen, may be unlawfully acquired, without a fraudulent or thievish intent.

"11. If the jury find that the property alleged to have been stolen was the property of the defendant, and that he had exercised *actual control, care* and management *over the same* prior to the alleged taking, you will find the defendent not guilty." This, upon the trial of this case, was a charge of the greatest importance. Its effect, the evidence tending strongly to prove, if it did not conclusively prove, that defendant was the just and legal owner of the property, was evidently to cut him off from this defense, unless he could show that he had exercised *actual control, care and management* over the property *prior* to the taking. We will not discuss this charge, it being beyond the

reach of criticism. Law, justice and the rights of the citizen are terribly maltreated by the principle therein contained.

What shall we say of the twelfth, which is as follows: "If you have any reasonable doubt as to the *guilt or innocence* of the defendant, you will give him the benefit of that doubt, and acquit him." Notwithstanding that the eleventh charge deprived defendant of a just and complete defense to the accusation against him, still we cannot comprehend how it were possible for the jury not to acquit the defendant if they observed the instructions of his honor below contained in this twelfth charge. By it they are instructed to acquit if they have any reasonable doubt of defendant's *guilt or innocence.* If they doubt guilt, they must acquit; and if they doubt innocence, they must acquit. Was there no doubt of either? The jury, by their verdict, say they believe him guilty; hence, of necessity, they must have doubted his innocence; and if so, under this charge, they should have acquitted him. The stronger the belief of guilt, the greater the doubt of innocence.

In every prosecution guilt is the affirmative proposition, and must be established beyond a reasonable doubt. Jurors are not required to believe defendant's innocence in order to acquit. They are not called upon to pass upon the defendant's innocence, but they *are* called upon to determine whether or not the State has proven beyond a reasonable doubt *the affirmative proposition,* to wit, *the guilt* of the defendant.

The next question presented is the sufficiency of the evidence to support the verdict. We are of the opinion that this verdict is not only unsupported by any evidence, but is very clearly and unquestionably against the evidence; and to permit it to stand would be a monstrous outrage. Not only so; its sanction by this court would tend to degrade and bring into contempt the solemn proceedings of the courts of the country.

It should be the pride and greatest effort of the courts of the country to protect the property, character, liberty and life of especially the innocent, law-abiding and virtuous citizens. By this verdict and judgment this citizen has not only been deprived of his property and liberty, but his character and that of his family stand blasted forever. The brand of a thief has been indelibly stamped upon him, not only without law and without evidence, but directly in the face of the evidence. Shall this court permit such verdicts, with all their dire consequences, to stand? By no means; for we are vested with the

power to reverse judgments upon the ground of the insufficiency of the evidence.

For the errors noted in the charge, and because the verdict is not supported by the evidence, the judgment is reversed and the cause remanded.

(The reporters will insert the statement of facts.)

*Reversed and remanded.*

Opinion delivered April 25, 1883.